IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES HALL,<br>    Plaintiff,<br><br>vs<br><br>NATIONWIDE MUTUAL INSURANCE<br>COMPANY,<br>    Defendant. | Civil Action No. 11-1416 |

MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

In this insurance coverage dispute, the defendant, Nationwide Mutual Insurance Company ("Nationwide"), moves for partial summary on the plaintiff's claims of bad faith in Counts II and IV of the second amended complaint. For reasons discussed below, Nationwide's motion for partial summary judgment on Counts II and IV (Document No. 30) will be denied.

The plaintiff, Charles Hall, commenced this action in the Court of Common Pleas of Fayette County, PA, seeking to recover uninsured motorist ("UM") benefits under an insurance policy issued by Nationwide. On November 4, 2011, Nationwide filed a timely notice of removal to this Court, and it is undisputed that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.[1]

At all relevant times, the plaintiff was insured under a policy of insurance issued by Nationwide at Policy No. 5437B652174 (second amended complaint at ¶ 5 and answer thereto). As part of this insurance policy, the plaintiff purchased stacked UM coverage in the amount of $50,000 for each person and $100,000 per occurrence (Id. at ¶ 7).

---

[1] The plaintiff is an individual who resides in Normalville, PA; Nationwide is an Ohio corporation with its principal place of business in Columbus, OH; and the amount in controversy exceeds the statutory limit.

On October 19, 2009, the plaintiff was involved in a motor vehicle accident. Describing the accident in his second amended complaint, the plaintiff asserts that he was operating his vehicle, a 2004 GMC Canyon pick-up truck, traveling north on Break Neck Road in Bull Skin Township, Fayette County, PA. As he approached the intersection of Break Neck Road and Spruce Hollow Road, an unidentified all-terrain vehicle failed to stop at the posted stop sign. To avoid hitting the vehicle, the plaintiff was forced to swerve his pick-up truck off the road, where it struck a tree. As a result of the accident, the plaintiff incurred serious injuries, including a displaced fracture of the right olecranon and multiple contusions, and his vehicle was severely damaged and totaled (second amended complaint at ¶¶ 8-12).

The plaintiff contends that on October 19, 2009, he contacted Nationwide to file an insurance claim on the accident, after which he was informed that he had to file a police report to satisfy a condition of his policy (Id. at ¶¶ 13-14). According to the plaintiff, on October 20, 2009, he contacted the Uniontown barracks of the Pennsylvania State Police and requested that a police report be filed on his accident (Id. at ¶ 15). The police refused to investigate the accident, but they provided the plaintiff with a Commonwealth of Pennsylvania Driver's Report to complete (Id. at ¶ 16). The plaintiff avers that he completed the Driver's Report and submitted it to the Pennsylvania Department of Transportation, where it was received on October 26, 2009 (Id. at ¶ 17). On January 13, 2010, Nationwide denied the plaintiff's UM claim on grounds that he failed to file a police report on the accident, refusing to accept the Driver's Report as sufficient (Id. at ¶¶18-19).

The plaintiff also claims that under the terms of the policy, Nationwide is obligated to indemnify his wage loss at a rate of $1,000 per month and $10,000 total (Id. at ¶ 35). The plaintiff contends that due to the accident, he was unable to work from October 19, 2009 through

2

April 2010 (Id. at ¶ 36); that in April 2010, he tried to return to work, but was unable to complete his job duties due to physical limitations suffered as a result of the accident; that he was laid off in June 2010 and has been unable to work since then (Id. at ¶ 37); and that despite being unable to work for over 10 months due to the accident, Nationwide refused to pay the full amount of his first party wage loss benefits (Id. at ¶ 39).

Based on these allegations, the plaintiff has filed a four-count second amended complaint. In Count I, the plaintiff complains that Nationwide is liable for breach of contract for having improperly denied his UM claim. In Count II, Nationwide is said to have acted in bad faith under Pennsylvania law by denying the plaintiff's UM claim without a reasonable basis. In Count III, the plaintiff claims that Nationwide breached the party's contract by refusing to pay him the full amount of first party wage loss benefits. In Count IV, the plaintiff contends that Nationwide acted in bad faith under Pennsylvania law by denying him wage loss benefits without a reasonable basis.

Nationwide has moved for partial summary judgment on the plaintiff's bad faith claims in Counts II and IV. Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

The record shows that following the plaintiff's accident, he submitted claims for UM and income loss benefits to Nationwide (Defendant's Concise Statement of Material Facts ["DSMF"] at ¶ 5 and plaintiff's response thereto). On October 20, 2009, one day after the accident, Nationwide obtained a recorded statement from the plaintiff, during which he denied reporting the accident to the police immediately after it occurred (Id. at ¶¶ 6-7).

The plaintiff's UM claim was assigned to Jalinn Klopp, a claims representative, who

contacted the plaintiff on October 21, 2009, two days after the accident (Id. at ¶¶ 8-9). On October 21, 2009, Klopp informed the plaintiff that he needed to report the accident to the police in order to receive UM benefits (Id. at ¶ 10). Klopp advised the plaintiff to file a report with the police department "ASAP" and to contact her with the name of the police department and the incident number, which the plaintiff said he would do (Id. at ¶ 12).

The next day, October 22, 2009, Klopp had another telephone conversation with the plaintiff, who said that he went that day to the Pennsylvania State Police ("PSP") and was given a form to fill out to send to Harrisburg, so as to file a report (Id. at ¶ 13). The plaintiff told Klopp he would fax a copy of the form to her (Id.). On November 9, 2009, Klopp had still not received a faxed a copy of the form, so she had another phone conversation with the plaintiff (Id. at ¶ 14); at that time, the plaintiff told Klopp he filed a report with the PSP and faxed the form to her, but as she did not receive it, he would refax it (Id.).

On November 24, 2009, Klopp spoke to the plaintiff, who asserted that he had an incorrect fax number and would fax the form to her; the plaintiff also stated that he spoke to the PSP in Harrisburg, who would not confirm if they received his form (Id. at ¶ 15). By December 11, 2009, Nationwide still had not received confirmation of a police report on the plaintiff's accident (Id. at ¶ 16). As such, Nationwide asserts that it sought to obtain a copy of the report directly from the PSP, but the PSP advised that they were unable to locate the report without an incident number, which the plaintiff did not have (DSMF at ¶ 17).

On December 30, 2009, Klopp called the PSP and was informed that they conducted a name search on the matter to no avail, such that the plaintiff must not have sent in a form (Id. at ¶ 18). In January 2010, Nationwide was unable to confirm that the plaintiff reported the accident to the police, whereupon it concluded he had not met its reporting requirement (DSMF at ¶ 19

4

and plaintiff's response thereto). Thus, on January 13, 2010, Nationwide sent a letter to the plaintiff, denying his claim for UM benefits (Id. at ¶ 20).

Over a year later, in February 2011, the plaintiff's previous counsel sent Nationwide a PennDOT "Driver's Accident Report" dated October 19, 2009 (Id. at ¶ 21). In July 2011, plaintiff's prior counsel submitted a demand package to Nationwide with a different PennDOT "Driver's Accident Report" which was dated October 22, 2009 (Id. at ¶¶ 22-23). Concerned about the discrepancies in the two accident reports, Nationwide again asked the plaintiff for proof that he reported the accident to the police (DSMF at ¶ 24). According to Nationwide, it still has not received documentation corroborating the plaintiff's assertion that he reported the accident to the police (Defendant's Memorandum [Doc. No. 31] at p. 5).

Concerning the plaintiff's wage loss claim, the record shows that at the time of the accident, the plaintiff worked for Swank Associated Companies ["Swank"] (DSMF at ¶ 25 and plaintiff's response thereto). Based on the plaintiff's injuries, Nationwide issued him two income loss benefit payments equal to the maximum monthly limits of $1,000 for the time he missed from the date of the accident until December 15, 2009 (Id. at ¶ 26). Nationwide asserts that the plaintiff told it that Swank usually laid off its workers "around Christmas" every year; as such, Nationwide spoke to the plaintiff's supervisor on December 8, 2009, and his supervisor confirmed that had the plaintiff not been off of work already, he would have been laid off from December 15, 2009 until March 2010 (Id. at ¶ 27). Due to the fact that the plaintiff would not miss work because of his injuries during the seasonal lay-off, Nationwide suspended issuance of his income loss benefits after December 15, 2009 (DSMF at ¶ 28). Nationwide apprised the plaintiff of this determination and informed him that if he remained unable to work after the seasonal lay-off, he could resume receipt of his income loss benefits at that time (Id. at ¶ 29).

On February 15, 2010, Nationwide spoke to the plaintiff, who advised that he would see his doctor on March 18th, at which time he expected to be released to work; however, due to snow, the plaintiff told Nationwide that his seasonal return to work had been moved to either the last week of March, or the first week of April 2010 (DSMF at ¶ 30 and plaintiff's response thereto). On March 29, 2010, the plaintiff informed Nationwide that he would be able to return to work the next week (Id. at ¶ 31). Nationwide confirmed with the plaintiff's health care providers that he had been released from treatment and was able to return to work with no restrictions (Id. at ¶ 32). The plaintiff apprised Nationwide that he returned to work in April 2010 (Id. at ¶ 33).

The plaintiff asserts that he hired an attorney to represent him in this litigation on June 6, 2010 (Id. at ¶ 35). The plaintiff's attorney sent a letter of representation to Nationwide, but did not mention that the plaintiff was no longer working and sought wage loss benefits (Id. at ¶ 36). On June 28, 2010, Nationwide closed the wage loss benefits portion of the plaintiff's claim (Id. at ¶ 34), but it did not deny his wage loss claim (Id. at ¶ 37).

In Counts II and IV of the second amended complaint, the plaintiff contends that Nationwide failed to deal fairly and in good faith with him. According to the plaintiff, Nationwide failed to reasonably investigate his claims and lacked a reasonable basis for denying his claims in violation of 42 Pa.C.S.A. § 8371.

It is provided in 42 Pa.C.S.A. § 8371:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

    (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

6

(2) Award punitive damages against the insurer.

(3) Assess costs and attorney fees against the insurer.

To prevail on a bad faith claim under § 8371, a plaintiff must show that: (1) the insurer lacked a reasonable basis for denying benefits under the policy; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680, 688 (Pa.Super. 1994), alloc. denied, 659 A.2d 560 (Pa. 1995). The term "bad faith" under the statute includes an insurer's frivolous or unfounded refusal to pay proceeds of a policy, as well as a lack of good faith investigation into the facts. Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super 2004).

"The insured is required to meet [his] burden of proving 'bad faith' by clear and convincing evidence." Babayan, supra, 430 F.3d at 137. "[M]ere negligence on the part of the insurer is insufficient to constitute bad faith; recklessness, however, can support a finding of bad faith." Polselli v. Nationwide Mutual Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994). To evince bad faith, "[t]he insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will'". Babayan, 430 F.3d at 137, quoting Brown, supra, 860 A.2d at 501.

As to the plaintiff's UM claim, Nationwide argues that he has not shown that it lacked a reasonable basis for denying his claim. According to Nationwide, it had a reasonable basis for denying UM benefits, as it could not confirm whether the plaintiff reported the accident to the police as required by the policy and Pennsylvania law.

In relevant part, the parties' insurance policy contains a provision pertaining to UM coverage that defines an "uninsured motor vehicle" as follows:

> The driver and the owner of the unidentified vehicle must be unknown. *A report must be made to the police within 24 hours and us within 30 days, or as soon as practicable. It must state that the insured has a legal action due to the accident. It must include facts to support the action…*

(Policy at p. U1 [at plaintiff's Exhibit A, Doc. 37-1]) (emphasis added).

Similarly, under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), an "uninsured motor vehicle" is defined in pertinent part as:

> An unidentified motor vehicle that causes an accident resulting in injury *provided the accident is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practical thereafter, that the claimant or his legal representative has a legal action arising out of the accident.*

75 Pa.C.A. § 1702 (emphasis added).

Importantly, neither the plain language of the above policy provision, nor § 1702 of the MVFRL requires that a "police report" be made on the accident. Under Pennsylvania law, "[§ 1702 of the MVFRL] does not require that a police report be produced by the claimant. Neither does the statute require the police report be produced; it only requires that the accident involving the unidentified vehicle be reported to the police." Hatcher v. Travelers Insur. Co., 617 A.2d 808, 809 (Pa.Super. 1992), appeal denied, 639 A.2d 29 (Pa. 1994). Accord, Kiker v. PA Financial Responsibility Assigned Claims Plan, 742 A.2d 1082, 1089 (Pa.Super. 1999) ("[T]o meet the requirements of § 1702, a claimant need only report the accident to the police and nothing more. Once a claimant reports an accident to the police, his obligation under § 1702 is fulfilled.")

Here, there is evidence showing that the plaintiff reported the accident to both Nationwide and the police. The record shows that the plaintiff reported the accident to Nationwide on either October 19, 2009 (the day of the accident), or on October 20, 2009 (DSMF at ¶¶ 5-7). On October 20, 2009 at 8:30 a.m., Nationwide obtained a recorded statement from

8

the plaintiff, at which time, Nationwide representative Robert Brookens and the plaintiff had the following exchange:

> Q. Did the police come out to the scene [of the accident]?
>
> A. No, no, they always told me that if it was off the road, you know, not bothering … traffic, they didn't have to be called.
>
> Q. Uh-huh.
>
> A. So, I didn't know if I should have called them or not, you know… This is all new to me, buddy. I've never…
>
> Q. Yeah, no, that's fine.

(Plaintiff's Exhibit F [Doc. 37-6] at p. 7). At that juncture, Nationwide was notified of the accident, but it did not then advise the plaintiff that he needed to report the accident to the police.

The next day, on October 21, 2009, Nationwide representative Klopp informed the plaintiff that he needed to report the accident to the police to receive UM benefits (DSMF at ¶ 10 and plaintiff's response thereto). Insofar as police notification, it appears that the plaintiff reported the accident to the police on October 22, 2009 upon going to the Uniontown barracks of the PSP with his wife. At that time, a police officer gave the plaintiff a form to fill out to send to Harrisburg, which the plaintiff completed with his father and mailed (See, affidavit of Pamela Hall [at plaintiff's Exhibit E, Doc. 42-5]; plaintiff's deposition at pp. 60-61 [at plaintiff's Exhibit G, Doc. 42-7]; and plaintiff's additional material facts "[PAMF" Doc. 42] at ¶¶ 46-52).

Apparently, the form given to the plaintiff by the PSP in Uniontown was a PennDOT "Driver's Accident Report". According to Lt. David J. Heckman, the Commanding Officer of the PSP in Uniontown Station, it was the policy of the PSP in Uniontown Station to provide individuals with a PennDOT "Driver's Accident Report" when they made reports of automobile accidents that had not been investigated by a policy agency (Affidavit of David J. Heckman at

9

¶ 3 [at plaintiff's Exhibit F, Doc. 42-6]).

On October 22, 2009, Ms. Klopp made a note in Nationwide's "All Activity Logs" as follows:

> Spoke to clmt. [i.e., plaintiff]. He went to psp today and they provided him w/form to fill out to send to Hbg to file PR. He is going to fax copy of this form to me.

(DSMF at ¶ 13 and plaintiff's response thereto). PennDOT received the plaintiff's "Driver Accident Report" on October 26, 2009, as evidenced by the date-stamped copy of the report (Plaintiff's Exhibit D, Doc. 42-4). The plaintiff testified that he sent a copy of the form, i.e., the "Driver's Accident Report", to Nationwide (Plaintiff's deposition at pp. 60-63 [at defendant's Exhibit D, Doc. 32-6]]).

By November 17, 2009, Nationwide considered the possibility that the plaintiff filed a PennDOT Accident Report, for on that date, an entry in its "All Activity Logs" from Glenn Newton provides in relevant part:

> 0100 ADVISORY COMMENTS: MGR- … Obtain report to determine if Penn Dot Accident report [or] State police report…

(PAMF at ¶ 55; Plaintiff's Exhibit B, Doc. 42-2, at p. HAL 00069). The plaintiff asserts that despite Nationwide's above entry in its "All Activity Logs" on November 17, 2009, no evidence shows that Nationwide attempted to obtain a copy of his PennDOT "Accident Report". Indeed, on December 30, 2009, Ms. Klopp contacted the PSP Headquarters in Harrisburg, after which she made an entry in Nationwide's "All Activity Logs" as follows:

> 0210 INVESTIGATION: - … Spoke to police report records dept. I asked how I can obtain PR [police report] if ins filled out form and mailed to PSP…. I do not have incident #. She searched by name and advised they have nothing in their system so insured must not have sent in form.

(Plaintiff's Exhibit B, Doc. 42-2, at p. HAL00049).

10

Presumably, in addition to checking for a police report -- which was not required under the policy or Pennsylvania law -- Ms. Klopp could have contacted PennDOT to search for the plaintiff's "Accident Report", but she did not. Further, Nationwide could have contacted the PSP in Uniontown Station -- where the plaintiff informed it he went -- to learn of its policy when an individual reports an automobile accident as the plaintiff claims he did, and it would have learned (as verified by Lt. Heckman) that the PSP provides PennDOT "Driver's Accident Reports" to individuals to complete. According to the plaintiff, after he informed Nationwide that he went to the PSP at Uniontown Station and was given a form to fill out concerning the accident, Nationwide never questioned his wife -- who is also an insured on the policy and accompanied him to the police station -- to corroborate his visit there.

In a letter dated January 13, 2010, Nationwide denied the plaintiff's claim for UM benefits on grounds that it could not ascertain if he submitted a report of his accident (DSMF at ¶ 20 and Exhibit 4 to Glenn Newton deposition [Doc. 32-3] at p. HAL00340). Thereafter, another entry was made in Nationwide's "All Activity Logs" pertaining to the plaintiff's claim dated August 2, 2010, created by BAKERK12, which provides:

> 0120 INVESTIGATION: - PSP Headquarters in Hbg @ 671-7500.
> Spoke to Amanda. They don't keep the rpt forms. These are only
> kep[t] at Penn dot.

(PAMF at ¶ 57; Plaintiff's Exhibit B, Doc. 42-2, at p. HAL00015).

Despite knowing that report forms are kept at PennDOT, not the PSP Headquarters in Harrisburg, the record fails to show that Nationwide contacted PennDOT to determine if the plaintiff submitted an accident report. Instead, Nationwide asserts that it was not until February 2011, that it received from plaintiff's attorney a PennDOT "Driver's Accident Report" which the plaintiff submitted dated October 19, 2009 (DSMF at ¶ 21). Even then, however, Nationwide

11

failed to act on the plaintiff's UM claim.

In July 2011, the plaintiff's previous counsel sent a demand package to Nationwide with a different PennDOT "Driver's Accident Report" dated October 22, 2009 (DSMF at ¶¶ 22-23 and plaintiff's response thereto).  At his deposition, the plaintiff explained that he sent the second "Driver's Accident Report" to PennDOT (dated October 22, 2009), because neither the PSP at Uniontown Station, nor PennDOT in Harrisburg could confirm that they received his first "Driver's Accident Report" (dated October 19, 2009) (Plaintiff's deposition at pp. 69-71 [at defendant's Exhibit D, Doc. 32-6]).

Under Pennsylvania law, an insurer may be liable for bad faith if it fails to make a good faith investigation into the facts of a claim, or engages in a frivolous or unfounded refusal to pay proceeds of a policy.  Brown, 860 A.2d at 501.  Ultimately, the insured must show that "'the insurer breached its duty of good faith through some motive of self-interest or ill will'". Babayan, 430 F.3d at 137, quoting Brown, 860 A.2d at 501.

Here, a reasonable trier of fact could find that Nationwide failed to make a good faith investigation into the plaintiff's UM claim.  By failing to contact PennDOT to ascertain if the plaintiff submitted a Driver's Accident Report", or the PSP at Uniontown Station to learn its procedure when an individual reports an automobile accident, Nationwide may have breached its duty of good faith through some motive of self-interest.  Therefore, summary judgment on Count II will be denied.

With respect to Count IV, in which the plaintiff claims that Nationwide handled his wage loss claim in bad faith, summary judgment is also inappropriate.  As recited above, Nationwide issued the plaintiff two income loss benefit payments equal to the maximum monthly limits of $1,000 for the time he missed work due to his injuries from the date of the accident until

December 15, 2009 (DSMF at ¶ 26 and plaintiff's response thereto). Nationwide suspended issuing income loss benefits to the plaintiff after December 15, 2009, as it learned he would not miss work due to his injuries, but because of Swank's seasonal lay-off of employees (occurring from about mid-December 2009 until the last week of March or the first week of April 2010) (Id. at ¶¶ 27, 28, 30, 31).

In April 2010, the plaintiff informed Nationwide that he returned to work (Id. at ¶ 33). On or about June 6, 2010, the plaintiff hired an attorney to represent him in this case (Id. at ¶ 35). Nationwide insists that the plaintiff's counsel at that time never informed it that the plaintiff stopped working (DSMF at ¶ 38). On June 28, 2010, Nationwide closed the wage loss benefits portion of the plaintiff's claim (Id. at ¶ 34). According to Nationwide, at no time prior to the filing of the plaintiff's second amended complaint on February 8, 2012 was it ever advised that he was unable to work after April 2010 (Defendant's reply brief [Doc. 39] at p. 5).

Significantly however, the plaintiff testified that in June 2010, he informed Nationwide -- through its employee who handled his case from the beginning -- that he could no longer work due his injured arm, and he wanted Nationwide to resume his wage loss benefits (Plaintiff's deposition at pp. 16-18 [at defendants' Exhibit D, Doc. 32-6]). The plaintiff testified that in response, he was told that Nationwide "would get back to [him]" on the matter (Id. at p. 17).

Plaintiff's current counsel avers that the plaintiff supplied Nationwide with an economic loss report completed by Donal Kirwan on January 16, 2012 (Plaintiff's memorandum [Doc. 37] at p. 13). In that report, Donal Kirwan, SPHR, stated that after the plaintiff's accident on October 19, 2009 and resultant injuries, "he returned to work in 2010 for approximately two months but was unable to continue working. He has not returned to any work since that time." (Plaintiff's Exhibit H at p.1[at Doc. 37-8]).

Plaintiff's counsel also avers that on May 3, 2012, the plaintiff sent Nationwide the medical records of Dr. Lance Brunton, which provided further notice to it that the plaintiff had stopped working (Plaintiff's memorandum [Doc. 37] at p. 13, citing Plaintiff's Exhibit Q [at Doc. 37-17). The plaintiff asserts that despite the aforesaid notice pertaining to his wage loss claim, Nationwide failed to pay him the remaining $8,000 in income loss benefits until September 11, 2012 (Plaintiff's Exhibit P [at Doc. 37-16]).

As gleaned from the letter accompanying the payment of $8,000 dated September 11, 2012, Nationwide opted to pay the plaintiff the remaining wage loss benefits based on a report of Dr. Tucker dated August 9, 2012 (Id.) According to Nationwide, prior to receiving Dr. Tucker's report, it did not have medical evidence that the plaintiff was disabled as a result of accident after April 2010 (Id.). However, the plaintiff avers that Nationwide's above assertion ignores previous evidence of his disability, including April 2012 records from Dr. Lance Brunton which were sent to Nationwide's counsel on May 3, 2012 (Plaintiff's memorandum at pp. 6-7).

The record shows that in June 2010, the plaintiff apprised Nationwide that he could no longer work due to injuries incurred in his accident, and he requested wage loss benefits (Plaintiff's deposition at pp. 16-18 [at defendant's Exhibit D, Doc. 32-6]). Thereafter, the plaintiff provided Nationwide with an economic loss report dated January 16, 2012 from Donal Kirwan, SPHR, who stated that the plaintiff "returned to work in 2010 for approximately two months but was unable to continue working [and] has not returned to any work since that time." (Plaintiff's memorandum [Doc. 37] at p. 13; and plaintiff's Exhibit H at p. 1 [at Doc. 37-8]). Echoing that fact, the plaintiff filed a second amended complaint on February 8, 2012, alleging:

> In April 2010, plaintiff attempted to return to work, but was unable to complete his job duties due to physical limitations suffered as a result of the October 19, 2009 accident. Because of his limitations, he was laid off in June 2010 and has been unable to work since.

(Second amended complaint at ¶ 37).

The plaintiff asserts that notwithstanding the above notice to Nationwide, including his conversation in June 2010 with its employee who handled his case from the beginning, Nationwide did not require him to attend an independent medical exam until April 27, 2012 (Plaintiff's memorandum [Doc. 37] at p. 13). It was not until September 11, 2012 that Nationwide paid the remaining limits of his wage loss claim (Plaintiff's Exhibit P [at Doc. 37-16]). The plaintiff insists that Nationwide did nothing but delay and obstruct him from receiving the wage loss benefits he was due.

Based on the record, a material question of fact exists as to whether Nationwide handled the plaintiff's wage loss claim in bad faith and with an improper motive. Accordingly, summary judgment on Count IV will be denied.

An appropriate Order will be entered.

O R D E R

AND NOW, this 31st day of October, 2012, for the reasons set forth in the Court's Memorandum Opinion filed this date,

IT IS ORDERED that the defendant's motion for partial summary judgment on Counts II and IV of the second amended complaint (Document No. 30) is denied.

s/ ROBERT C. MITCHELL
United States Magistrate Judge